IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF:<br><br>**Black, Apple iPhone (Touch ID) cellular telephone, with a clear Otterbox case, currently in the custody of the Bureau of Alcohol, Tobacco, Firearms and Explosives, 901 East Saint Louis Street, Suite 201, Springfield, Missouri 65806 (more fully described in Attachment A).** | Case No. 19-SW-2134DPR |

**AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER
RULE 41 FOR A WARRANT TO SEARCH AND SEIZE**

I, Brian J. Fox, being first duly sworn, do depose and state that:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property – an electronic device – which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2. I am a Special Agent (SA) with the United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and I am assigned to the Springfield, Missouri, Field Office of the Kansas City Field Division. I am a "federal law enforcement officer" within the meaning of Rule 41 of the Federal Rules of Criminal Procedure.

3. I have been employed as an SA with ATF for over 11 years. Prior to my employment with ATF, I was a trooper with the Missouri State Highway Patrol (MSHP) for approximately seven years and a criminal investigator within the MSHP Division of Drug

1

and Crime Control for approximately one year. I have received formal training at the MSHP Law Enforcement Academy, Federal Law Enforcement Training Center, and the ATF National Academy.

4. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

5. The property to be searched is a **Black, Apple iPhone (Touch ID) cellular telephone, with a clear Otterbox case**, hereinafter the "Device." The Device is currently located at the ATF Field Office located at 901 East Saint Louis Street, Suite 201, Springfield, Missouri 65806, in the Western District of Missouri. A description of the Device is included in Attachment A, which is incorporated by reference herein.

6. The applied-for warrant would authorize the forensic examination of the Device for the purpose of identifying electronically stored data particularly described in Attachment B, which is incorporated by reference herein.

## TECHNICAL TERMS

7. Based on my training and experience, I use the following technical terms to convey the following meanings:

    a. Cellular or wireless telephone: a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other cellular telephones or traditional "landline" telephones. A cellular telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and

2

from the telephone. In addition to enabling voice communications, cellular telephones offer a broad range of capabilities. These capabilities include: storing names and telephone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Cellular telephones may also include global positioning system ("GPS") technology for determining the location of the device.

      b.     Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

      c.     Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending

3

on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

        d.      GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

        e.      PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include

4

various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

      f.    Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

8.    Based upon my training and experience, and research, I know that the Device has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA, and that it can connect to the Internet. In my training and experience, examining data stored on devices can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## PROBABLE CAUSE

9.    On July 24, 2019, I initiated an investigation into the unlawful possession of firearms and ammunition by Roy G. Harris, Jr. ("HARRIS"), who is a prohibited person based on a previous conviction for a felony offense. Specifically, in 2002, HARRIS was convicted in the state of Missouri of the felonies of fraud in the offer, sale or purchase of a

security, stealing, and deceptive business practice. Each of these charges were punishable by a term of imprisonment exceeding one year.

10. I learned that on February 27, 2019, HARRIS pleaded guilty to one count of wire fraud pursuant to an information and plea agreement in the United States District Court for the Western District of Missouri, case number 19-03034-01-CR-S-BP. HARRIS was released on bond pending sentencing. While awaiting sentencing, HARRIS was caught shoplifting at Menards in Springfield, Missouri, and surrendered himself into the custody of the United States Marshals Service on July 15, 2019, in lieu of having his bond revoked.

11. On July 29, 2019, I contacted Stacey Roberts ("Roberts"). Roberts stated that she owns the residence at 6033 E. Farm Road 186, Rogersville, Missouri, a location in the Western District of Missouri, and that the residence was assigned to her through her divorce with HARRIS in late 2018. From that time until April 30, 2019 (when the residence was damaged by a tornado), HARRIS had been living in the residence and paying the mortgage, while she lived in Rolla, Missouri. Roberts said they had been separated/divorced the past five years and Harris had lived alone at the residence for all of that time. After the tornado hit, the house was uninhabitable and HARRIS began living with his girlfriend, Leslie Crayton ("Crayton").

12. Roberts stated that after HARRIS was taken into custody in July, she, on July 19, 2019, went to the residence and noticed a blue tote in the attached garage, which she discovered contained ammunition. On July 23, 2019, Roberts returned to the residence with her son-in-law to obtain the ammunition. While there, they discovered five more containers of ammunition in the attached garage. Roberts and her son-in-law took the ammunition with

6

them back to the son-in-law's residence in Rolla. Roberts also said that she found marijuana in the house. On July 29, 2019, I administratively seized the ammunition in Rolla, Missouri, and it is stored as evidence at the ATF Field Office located at 901 East Saint Louis Street, Suite 201, Springfield, Missouri 65806.

13. On July 30, 2019, ATF SA Jerry Wine and I contacted Leslie Crayton at her residence in Springfield, in the Western District of Missouri. Crayton confirmed that she stored firearms at her residence, which were owned by her boyfriend HARRIS. Crayton said she had dated HARRIS since July 2017. She knew he was a felon and HARRIS had acknowledged his convictions to her. In April 2019, after a tornado damaged HARRIS' residence near Rogersville, Missouri, Crayton allowed him to move in with her until his sentencing on his federal charge. Crayton said that some of HARRIS' personal possessions were moved into her residence, including various firearms.

14. Crayton said that in November 2017, she and her child, along with HARRIS and his children shot firearms at the Rogersville residence using HARRIS' firearms. Dale Roberts (Stacey Roberts' brother and attorney) had earlier provided me with photographs and a video obtained in the past from Crayton's Facebook account, which showed HARRIS and other individuals shooting firearms. Crayton would later confirm that she did record the video.

15. Crayton said before HARRIS was placed in custody for his bond violations, HARRIS told her that there were some firearms he wanted to keep and some he wanted to sell. HARRIS said there was an unknown person that would sell the firearms for him. On

7

July 30, 2019, I administratively seized 19 firearms and assorted ammunition that were located at Crayton's residence, all of which Crayton said were owned by HARRIS and possessed by him prior to going into custody on July 15, 2019. The firearms and ammunition are stored as evidence at the ATF Field Office in Springfield, Missouri

16. On Thursday, August 22, 2019, Assistant United States Attorney Casey Clark and I met with Leslie Crayton in regard to the investigation concerning HARRIS and his firearms. The meeting occurred at the United States Attorney's Office in Springfield. During the meeting Crayton said that she had two Apple iPhones that belonged to HARRIS. Crayton said HARRIS left the phones with her when HARRIS self-surrendered to the custody of the United States Marshal Service. Crayton said that she had opened the phones, with the passcodes known to her, and saw that one phone contained photographs of HARRIS' firearms. Leslie said that she believed one of the iPhone's telephone number was forwarded to the other iPhone. Leslie also believed that the iPhones were possibly synced to one another. Leslie mentioned that one of the iPhones contained a voicemail and text message in regard to a firearm.

17. On Tuesday, August 27, 2019, I met with Leslie Crayton at the ATF Field Office in Springfield. Crayton provided me with the two iPhones: Black, Apple iPhone (Touch ID) with clear Otterbox case and a Black Apple iPhone (Face ID) with yellow Otterbox case. Crayton indicated a photo album of HARRIS' firearms was on the iPhone with Touch ID. Crayton also indicated there was a text and a voicemail message regarding firearms on the iPhone with Face ID. Crayton provided to me the passcodes that she had used to unlock each of the two iPhones.

8

18.     I believe these two iPhones contain evidence that shows that HARRIS had been unlawfully in possession of firearms, in violation of 18 U.S.C. § 922(g).

19.     The Device is currently in the lawful possession of the ATF and has remained in the custody and care of law enforcement since the time it was seized. The Device has not been altered and, based on my training and experience, the data that it contains should be intact and retrievable. The Device is currently being stored at the ATF Field Office at 901 East Saint Louis Street, Suite 201, Springfield, Missouri 65806. In my training and experience, I know that the Device has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the Device first came into the possession of the ATF. Therefore, while the ATF may already have all necessary authority to examine the Device, I seek this additional warrant out of an abundance of caution to be certain that an examination of the Device will comply with the Fourth Amendment and other applicable laws.

20.     Based on my training and experience, I know that a cellular or wireless telephone is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other cellular telephones or traditional "landline" telephones. A cellular telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the telephone. In addition to enabling voice communications, cellular telephones offer a broad range of capabilities. These capabilities include: storing names and telephone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and

moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Cellular telephones may also include global positioning system ("GPS") technology for determining the location of the device.

21. Based upon my training and experience, I know that cellular or wireless telephones and their compatible hardware, in conjunction with computer software, are often utilized to store records including, but not limited to, those relating to business activities, criminal activities, associates names and addresses, and the identity and location of assets illegally gained through these criminal activities. These records are more fully described as information or data stored in the form of electronic or magnetic coding on cellular telephone and computer media or on media capable of being read by a computer or computer-related equipment. This media includes, but is not limited to, fixed hard drives and removable SIM cards, hard drive cartridges, laser disks, tapes, floppy diskettes, and any other media capable of storing magnetic coding.

22. Based on my training and experience, I know that cellular telephones often contain information that will help identify sources of supply and the intended recipient of the illegal items.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

23. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

24. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

    a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

    b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

    c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

    d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

11

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

25. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the Device to human inspection in order to determine whether it is evidence described by the warrant.

26. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

27. Based on the aforementioned facts herein, I respectfully submit that there is probable cause to believe that cellular telephone of Roy G. Harris, Jr., as further described in Attachment A, contains the information further described in Attachment B related to violations of 18 U.S.C. § 922(g), that is, unlawful possession of firearms by a prohibited

12

Case 6:19-sw-02134-DPR   Document 1-1   Filed 09/20/19   Page 12 of 13

person. Therefore, I respectfully request this Court issue a warrant to search the Device described in Attachment A to search for and seize the items described in Attachment B.

Respectfully submitted,

*[signature]*

Brian J. Fox
Special Agent
ATF

Subscribed and sworn to before me in my presence on this 20th day of September, 2019.

*[signature]*

DAVID P. RUSH
United States Magistrate Judge

13

Case 6:19-sw-02134-DPR   Document 1-1   Filed 09/20/19   Page 13 of 13